# Illinois Official Reports

## Appellate Court

---

### *People v. Borizov*, 2019 IL App (2d) 170004

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY C. BORIZOV, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-17-0004 |
| Filed | November 22, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CF-569; the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Christofer R. Bendik, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Burke and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Johnny C. Borizov, appeals from the trial court's dismissal of his *pro se* postconviction petition, which alleged that his appellate counsel was ineffective for failing to raise each issue preserved in the motion for a new trial defendant filed following his convictions of three counts of first degree murder and one count of solicitation to commit murder. For the reasons that follow, we affirm the dismissal.

¶ 2                                    I. BACKGROUND

¶ 3        In his motion for a new trial, defendant alleged 31 trial errors. One of those alleged errors was that Juror 189 should have been dismissed after informing the trial court that she realized that she attended church with a cousin of the victims in the case. The trial court held a hearing on defendant's motion and denied it before sentencing him to three consecutive terms of natural life in prison for the murders and a consecutive term of 30 years for the solicitation to commit murder.

¶ 4        On direct appeal, defendant, through his appellate counsel, contended that a new trial should be granted due to a pervasive pattern of prosecutorial misconduct. In support, defendant argued that the prosecution introduced certain irrelevant and prejudicial evidence for the purpose of showing the jury that he was a bad person. Defendant also pointed to numerous "objectionable comments" made by the prosecution during closing and rebuttal arguments. Defendant argued that the prosecution made comments ridiculing defense counsel, disparaging defendant, and misstating the law. Defendant asserted that the evidence was closely balanced and that the jury was likely improperly influenced by the numerous prosecutorial errors. This court held that, although the prosecution committed several instances of misconduct, the evidence was not closely balanced and the prosecution did not engage in a pervasive pattern of misconduct warranting a new trial. See *People v. Borizov*, 2015 IL App (2d) 130736-U.

¶ 5        On October 4, 2016, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). He alleged that his appellate counsel on direct appeal was ineffective. To wit, defendant alleged that:

          "Appellate counsel failed to consult with trial counsels [*sic*] regarding his decision to raise only one issue at the time of trial. He failed to consult with defendant *** regarding any other issues that were raised in the Motion for New Trial. The Motion for New Trial raised 31 points, many of which were significant. His failure to raise issues that were objected to at trial, and filed in the Motion for New Trial, prejudiced my appeal and was a direct result of it being denied. Defendant attaches the Motion for New Trial as an exhibit. Appellate Counsel was ineffective under *Strickland v. Washington*[, 466 U.S. 668 (1984)].

          If appellate counsel raised issues he failed to raise, it would likely have caused the appellate court to grant a new trial."

¶ 6        On December 13, 2016, the trial court summarily dismissed defendant's petition. In doing so, the trial court characterized defendant's claim as "non-specific, bald and conclusory." Further, the trial court found that defendant "fail[ed] to specify, as required by *Strickland*, how he has been prejudiced by any alleged error of appellate counsel."

¶ 7        This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9        In this appeal, defendant contends that the trial court erred in summarily dismissing his postconviction petition, as it properly alleged defendant's appellate counsel's ineffectiveness for not raising the preserved structural error of Juror 189's implied bias. Defendant argues that this claim of a constitutional violation has an arguable basis in law and fact.

¶ 10       The Act provides a tool by which those under criminal sentence in this state can assert that their convictions or sentences were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2016). "A proceeding brought under the [Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). The purpose of a postconviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal; issues that could have been raised on direct appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005). The standard of review for the dismissal of a postconviction petition is *de novo. People v. Coleman*, 183 Ill. 2d 366, 389 (1998).

¶ 11       At the first stage of a postconviction proceeding, the trial court must independently review the petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Id.* at 16-17. If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2016). At the first stage, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *Coleman*, 183 Ill. 2d at 380. At this stage, the court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Id.* at 385.

¶ 12       At the first stage, the petition need set forth only the "gist" of a constitutional claim and only a limited amount of detail; it need not set forth the claim in its entirety. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Further, the petition need not include legal arguments or citations to legal authority. *Id.* at 244, 258. Our supreme court in *Hodges* clarified that "gist" does not refer to the legal standard used in our review. "[O]ur use of the term 'gist' describes what the defendant must allege at the first stage; it is not the legal standard used by the circuit court to evaluate the petition, under section 122-2.1 of the Act, which deals with summary dismissals. Under that section, the 'gist' of the constitutional claim alleged by the defendant is to be viewed within the framework of the 'frivolous or *** patently without merit' test." *Hodges*, 234 Ill. 2d at 11.

¶ 13        Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test also applies to claims of ineffective assistance of appellate counsel. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case can be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance. *Id.* at 697.

¶ 14        A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and prejudiced the defendant. *Rogers*, 197 Ill. 2d at 223. Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). Thus, the inquiry as to prejudice requires the court to examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Id.* Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 15        Here, in his petition, defendant claimed not that appellate counsel was ineffective for failing to raise a specific issue, but that counsel was ineffective for failing to raise unspecified issues among the 31 preserved issues in defendant's motion for a new trial.

¶ 16        We first note that appellate counsel did raise some of those issues. As discussed above, appellate counsel argued a pervasive pattern of prosecutorial misconduct as a ground for a new trial. Within this framework, counsel pointed to the prosecution's introduction of "irrelevant and prejudicial evidence," introduced for the purpose of showing defendant to be a bad person, and numerous "objectionable comments" made by the prosecution during closing and rebuttal arguments. *Borizov*, 2015 IL App (2d) 130736-U, ¶ 58.

¶ 17        Appellate counsel's argument that the prosecution introduced "irrelevant and prejudicial evidence" included the specific allegation that the prosecution improperly questioned Angela Kramer about Steve Hetman, her deceased ex-boyfriend and defendant's best friend. Defendant began dating Angela shortly after Steve's untimely death in a motorcycle accident. Counsel argued that the "true purpose of this evidence" was to show that defendant was an immoral person. *Id.* ¶ 61. This argument tracked paragraph 11 of defendant's motion for a new trial, in which he alleged that

        "[the trial court] erred in allowing the State to ask Angela Kramer about Steve Hetman, her previous fiancé who was a friend of the Defendant's and died in a motorcycle accident. The sole motive of the State was to impugn the character of the Defendant for dating his deceased friend's girlfriend."

¶ 18        Appellate counsel also specifically alleged that the prosecution introduced "irrelevant and prejudicial evidence" in the form of an out-of-court statement made by defendant's uncle,

Greg Georgevich. When Graham Morenz testified that he had a conversation with Georgevich after the murders, trial counsel objected, and the objection was sustained. However, the trial court allowed Morenz to testify on redirect that Georgevich told him "not to let the police search the apartment without a search warrant." In paragraph 21 of defendant's motion for a new trial, he alleged that "[the trial court] erred in allowing witness Graham Morenz to testify to Greg Georgevich's hearsay statement about a search warrant of the *** apartment."

¶ 19    Appellate counsel's argument regarding the prosecution's "irrelevant and prejudicial evidence" continued with the contention that Henry Prucha was improperly allowed to testify that defendant's source of drugs was from the Latin Kings street gang. *Id.* ¶ 67. Counsel argued that this was a thinly veiled attempt to "back door" evidence that had previously been excluded. *Id.* ¶ 69. In paragraph 24 of defendant's motion for a new trial, he alleged that "[the trial court] erred when it allowed the State to introduce evidence through witness Henry Prucha *** that the Defendant had connections in street gangs to get pills/drugs. *** The defendant was unfairly prejudiced by the admission of this evidence."

¶ 20    Defendant claimed in his petition that his motion for a new trial "raised 31 points, many of which were significant." He goes on to say that "[counsel's] failure to raise issues that were objected to at trial, and filed in the motion *** prejudiced my appeal and was a direct result of it being denied." To the extent that defendant asserted that counsel raised none of those issues, this is patently false. As noted, counsel raised at least three issues that were preserved in defendant's motion for a new trial. To the extent that defendant asserted that counsel should have raised *additional* issues, he did not specify those issues. The "gist" standard is a low threshold. *Edwards*, 197 Ill. 2d at 244. But this did not relieve defendant from alleging facts that demonstrate how appellate counsel's performance was objectively unreasonable and prejudiced defendant. Defendant placed the burden on the trial court to parse through all the claims listed in the motion for a new trial, without specifying which claims counsel should have raised. The Act requires a petition to "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2016). Defendant's petition did not do this, and the trial court was not under a duty to independently explore all potential, yet not clearly identified, constitutional violations that might have befallen defendant.

¶ 21    It is impossible to gauge from defendant's petition the precise basis for his claim that appellate counsel's performance fell below an objective standard of reasonableness. Without these necessary facts, defendant's petition cannot establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As defendant's petition lacks grounds for sufficient prejudice, this court need not consider the quality of appellate counsel's performance. See *Strickland*, 466 U.S. at 697. Hence, we cannot say that defendant's petition sets forth the gist of a constitutional claim.

¶ 22    However, even if we were to hold that defendant's petition sufficiently articulated his present claim, it would still fail. As discussed above, appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *Simms*, 192 Ill. 2d at 362. Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant

does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Id.* As noted, a petition lacks an arguable basis in law or fact if it is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16.

¶ 23    Defendant contends that appellate counsel was ineffective for failing to argue that Juror 189 suffered from an implied bias due to her friendship with a fellow church member who was a first cousin of the victims. Defendant argues that the trial court's failure to excuse this juror amounted to structural error and that, had the juror's relationship been disclosed during *voir dire*, defendant would have used his remaining peremptory challenge on her.

¶ 24    In *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), our supreme court held that "essential to the qualification of jurors in a criminal case is that they know" that the defendant (1) is presumed innocent, (2) is not required to offer any evidence on his or her own behalf, (3) must be proved guilty beyond a reasonable doubt, and (4) may decide not to testify on his or her own behalf and this cannot be held against him or her. It follows that this qualification must come at the outset of the trial because, if a juror has a bias against any of these basic guarantees, an instruction given at the end of the trial will have little effect.

¶ 25    In light of *Zehr*, Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 26    At the start of jury selection here, the trial court asked the *venire* whether they knew any of the victims in the case. Juror 189 did not state that she knew any of the victims. The court then addressed the potential jurors as follows:

"The defendant is presumed innocent of the charges against him. This presumption remains with him throughout every stage of the proceedings, including your deliberations on a verdict, and this presumption is not overcome unless from all the evidence in the case, you are convinced beyond a reasonable doubt that the State has proven the defendant guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. And this burden remains on the State throughout the case. The defendant is not required to prove his innocence.

The defendant is not required to present any evidence or witnesses on his own behalf. The defendant is not required to testify, but should he choose not to testify, that fact must not be considered by you in any way at arriving at your verdict."

¶ 27    Juror 189 was selected as one of the jurors. The trial court swore in the jury. The court again articulated the principles listed above and asked the jurors if they understood each principle. Juror 189 indicated that she understood.

¶ 28    The case was then continued over the weekend. Upon reconvening, Juror 189 informed the trial court that one of her church friends was a cousin of the victims. The following exchange took place between the trial court and Juror 189:

"THE COURT: [You] [i]ndicat[ed] something about a close church friend of yours knowing somebody in the case, if I have that right. Can you tell me what that was?

JUROR 189: This came up Saturday. I mean, I have known this person obviously, but I didn't realize the connection until Saturday. It is a friend of mine in church, and she is a first cousin to the victims.

THE COURT: Your friend is first cousin to?

JUROR 189: The victims, the Kramer side.

THE COURT: Did you have a discussion with−

JUROR 189: With her?

THE COURT: Yes.

JUROR 189: No, no.

THE COURT: How did this come to your−

JUROR 189: Well, two years ago, you know, it was generally discussed that she had family members that had been involved but not this specific case. I didn't realize it was this case. Saturday we were at a fundraiser, and there were a lot of people involved and now this is going to trial. Apparently people are talking about it and I heard it and put two and two together that this was her family.

THE COURT: Did you talk to your close friend?

JUROR 189: No, I did not.

THE COURT: So this just occurred to you that this was the relationship?

JUROR 189: Right, I didn't know what to do with that information. That's why I called.

THE COURT: I appreciate it. How did you determine she was the first cousin?

JUROR 189: Just from the conversation that someone else was having, that I wasn't even in on that conversation. But I heard it and I thought, you know, that's when I realized.

THE COURT: Was there anything else about that conversation that touched on the aspects of the case?

JUROR 189: No, nothing.

THE COURT: And did you talk about this conversation you overheard with any of the other jurors?

JUROR 189: No, no.

* * *

THE COURT: Okay. And is there anything about this that's going to affect your ability to be fair and impartial in the case?

JUROR 189: Well, I would hope not. But you know, I searched my heart about this, and it's just hard for me to say. I know in my head I need to see all the facts, and I would hope that that's exactly what I'm going to do.

- 7 -

THE COURT: All right. Well, of course there are people that have tangential relationships with people and some touch on the case in some way.

JUROR 189: And it's a small world. Who would have thought.

THE COURT: Right. As you know, it is your duty to decide the issues in the case solely from the evidence that's presented in the courtroom.

JUROR 189: I do understand.

THE COURT: And not to allow sympathy, bias or prejudice of any kind to influence you when you are deciding the issues in the case. Do you understand?

JUROR 189: I do understand.

THE COURT: And you must not feel any need to explain or justify whatever verdict you reach in this case to anybody. Do you understand that?

JUROR 189: I do.

THE COURT: And you can abide by those rules?

JUROR 189: Yes."

Defense counsel, outside the presence of Juror 189, asked the trial court for permission to question her. The trial court denied this request but agreed to question her further itself, and it did so in the following exchange:

"THE COURT: You have told me that you do understand, as I have mentioned a number of times during jury selection, that your verdict must be free from any sympathy, bias or prejudice of any kind. Do you understand that?

JUROR 189: Yes.

THE COURT: And can you abide by that?

JUROR 189: Yes.

THE COURT: Now, I understand that the situation you have talked about, as you put it, you thought it over and it was in your mind. And of course you can't dismiss things from your mind. We have talked about that. But you do have to set things aside to the extent that you can assure both sides here that your focus will be on the evidence presented inside the courtroom and not on any other outside relationship or information, just on the testimony of the witnesses and the evidence presented in the courtroom. Can you focus to the extent that you can render a decision based only on that?

JUROR 189: I believe I can. Because I think I said once before, I am very detail oriented. So that's what I would be looking for, the facts and details.

THE COURT: You will keep an open mind and wait until you hear everything before you reach a decision?

JUROR 189: Yes.

THE COURT: You will not allow any outside influence or this particular relationship to influence you?

JUROR 189: No. Well, now that I know about it, I will try to avoid it.

THE COURT: And you must avoid it. As you know, as I have said every time there is a break, you can't discuss anything about this case or any aspect of the case, not even with your other jurors. You can't start talking about it until it's time to deliberate. Do you understand that?

JUROR 189: I understand.

THE COURT: And that includes if anybody tries to talk to you about it, you have to just tell them I cannot talk about this, and you can't engage in any kind of conversation. Do you understand?

JUROR 189: I understand.

THE COURT: And you don't feel the need to do so with this close friend of yours, do you, to talk about the case?

JUROR 189: No.

THE COURT: Do you see her on a frequent basis?

JUROR 189: I mean, she is not my closest friend. Let's put it that way.

THE COURT: You don't see her everyday?

JUROR 189: Oh, no.

THE COURT: And in fact, it's my understanding, unless I have this wrong, you didn't talk to her about this?

JUROR 189: I have not talked to her at all.

THE COURT: And you will not.

JUROR 189: No."

Defendant renewed his motion to excuse Juror 189 and asked for additional questioning. The trial court denied the requests.

¶ 29    The right to a jury trial guarantees to a criminal defendant a fair trial by a panel of impartial jurors. *People v. Cole*, 54 Ill. 2d 401, 411 (1973). A person is not competent to sit as a juror if his or her state of mind or mental attitude is such that, with him or her as a member of the jury, the defendant will not receive a fair and impartial trial. *Id.* at 413. The burden of showing that a juror possesses a disqualifying state of mind is on the party making the challenge, and the determination of whether the juror has the state of mind that will enable him or her to give to an accused a fair and impartial trial rests in the sound discretion of the trial judge. This determination is not to be set aside unless it is against the manifest weight of the evidence. *Id.* at 414-15.

¶ 30    Here, the record reflects that the trial court complied with Rule 431(b) on at least two occasions and that Juror 189 was present and understood the ramifications of the trial court's inquiry both times. Juror 189 did not even know that she had a tangential relationship to the victims in this case until she overheard a conversation, after the *voir dire*. Defendant wants to classify her relationship to the victims' cousin as "close," but that is a term that the trial court used when questioning her about her ability to remain impartial. Juror 189 specifically referred to the cousin as "not my closest friend. Let's put it that way." She told the trial court that she did not see the cousin every day. She reiterated many times that she understood that she had to remain impartial and not discuss the case with anyone.

¶ 31    Our supreme court has addressed the issue of a juror's implied bias in the context of a tangential relationship remarkably similar to the one presented here. In *People v. Porter*, 111 Ill. 2d 386 (1986), a juror attended the same church as the mother of the victim. The juror stated that she did not realize this until after " 'it had gotten started and everything was going on.' " *Id.* at 397. The trial court questioned the juror after the trial had concluded. The juror stated that the fact that she and the victim's mother attended the same church "didn't make

any difference to" her. *Id.* The trial court denied a subsequent motion for a mistrial. Our supreme court noted that all the record showed was that the juror and the victim's mother attended the same church. *Id.* at 404. This was insufficient to show that the defendant had suffered any prejudice. *Id.*

¶ 32 To find that the trial court's decision here to allow Juror 189 to remain impaneled amounts to structural error would be fanciful at best. The record reveals that the trial court went to great lengths to ensure that Juror 189 understood her role as an impartial juror. Further, her relationship to a cousin of the victims is insufficient to show that defendant suffered any prejudice, as all the record reflects is that Juror 189 and the cousin attended the same church. As such, because the trial court was in the best position to evaluate Juror 189's responses and demeanor upon questioning, the record shows that it committed no error in deciding that she could be fair and impartial. Defendant's appellate counsel was not ineffective for failing to raise this issue on direct appeal. Thus, defendant's petition lacks an arguable basis in law or fact, as it is completely contradicted by the record.

¶ 33                                    III. CONCLUSION

¶ 34 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 35 Affirmed.