2021 IL App (2d) 190511-U
No. 2-19-0511
Order filed December 20, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-2977 |
| MICHAEL S. AXTELL, | ) ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justice Jorgensen concurred in the judgment.
Justice Birkett specially concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*: First-stage dismissal of defendant's postconviction petition was improper where defendant presented an arguable claim that defense counsel on direct appeal was ineffective for failing to challenge the State's proof at trial that defendant's punch to the victim's head caused her death.

¶ 2    Following a bench trial, defendant, Michael S. Axtell, was convicted of first-degree murder (720 ILCS 5/9-1(a)(2) (West 2012)) for the death of Tammy Stone. He appeals from the first-stage dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)) challenging that conviction. Defendant contends that his petition stated the

gist of a claim that appellate counsel on direct appeal was ineffective for, in essence, conceding the State's theory of what caused Stone's death. He argues that appellate counsel's concession on causation undermined counsel's argument that there was insufficient evidence of *mens rea*. Alternatively, defendant argues that we should reverse because the trial court used the wrong standard in judging the sufficiency of his postconviction petition. We conclude that the petition stated the gist of a constitutional claim, and we reverse the first-stage dismissal and remand the cause for second-stage proceedings under the Act.

¶ 3                                     I. BACKGROUND

¶ 4        The evidence adduced at defendant's bench trial is set forth in our opinion in *People v. Axtell*, 2017 IL App (2d) 150518. The essence of the State's case was that defendant punched Stone, the woman with whom he lived and the mother of his children, at least three times during the evening of October 4, 2012. According to the State, defendant killed her with the final blow, which caused a laceration of her right posterior cerebral artery, which in turn caused a fatal subarachnoid hemorrhage. At trial, both *mens rea* and the mechanism of Stone's death were contested issues. The trial court found defendant guilty of first-degree murder. The court specifically found that defendant knew that punching Stone for the third time would create a strong probability of death or great bodily harm to her. We summarized the court's findings of fact on the cause of Stone's death:

> "While in custody, defendant admitted that he had hit Stone [a final time while she
> was in] in the bedroom, and the evidence disproved his story that a fall off a chair had
> caused Stone's loss of consciousness in the kitchen shortly before. [The State's expert]
> had testified that Stone died of a subarachnoid hemorrhage that had resulted from a tear in
> her right posterior cerebral artery, which in turn had been caused by a blow from defendant.

That blow had required a significant amount of force in order to cause the head to hyperextend and the brain to move so as to expose the artery to the bony ridges. [The State's expert] had found no evidence of an aneurysm. Although [defendant's experts] disagreed with [the State's expert], they admitted that they found no sign of an aneurysm. Thus, the judge credited [the State's expert's] opinion of the cause of Stone's death." *Axtell*, 2017 IL App (2d) 150518, ¶ 54.

¶ 5 The trial court explained the basis for its finding that defendant knew that punching Stone for the third time would create a strong probability of death or great bodily harm:

" 'We know [Stone] was found crying in the living room on the ground after a first thud. The second thud is the first time anyone saw any redness or swelling. She was not responsive. She was knocked out cold on the floor laying on the ground. Again, why [her son] did what he did in dragging her away leaving her alone, I don't know. It does not change the fact that *she was knocked unconscious, which to this Court is great bodily harm*. ***

We know again there was an argument between the defendant and his daughter. That after that argument [Stone] and *** defendant go into the bedroom. And by his own words she was yelling at him. That he just knocked her off the bed. He did not think he hit her that hard. He knocked her unconscious, and not just unconscious. It is what caused her death.' (Emphasis added.) " *Axtell*, 2017 IL App (2d) 150518, ¶ 55.

¶ 6 Defendant challenged on appeal the sufficiency of the evidence to support his conviction of strong-probability murder. We commented that defendant's argument was limited to the issue of *mens rea*:

"Defendant implicitly concedes that the trial court was within its prerogative in finding that his attack on Stone caused a rupture in her posterior cerebral artery that, in turn, caused the subarachnoid hemorrhage that resulted in her death. Defendant thus does not dispute causation but limits his argument to guilty knowledge. He maintains that the State did not prove beyond a reasonable doubt that he knew that the fatal blow created a strong probability of death or great bodily harm to Stone. See 720 ILCS 5/9-1(a)(2) (West 2012). Defendant acknowledges that the evidence proved beyond a reasonable doubt that the fatal blow was likely to cause death or great bodily harm to Stone and that he performed it recklessly, thus making him guilty of involuntary manslaughter. See 720 ILCS 5/9-3(a) (West 2012). Therefore, he contends that his conviction must be reduced to that offense and the cause must be remanded for resentencing." *Axtell*, 2017 IL App (2d) 150518, ¶ 57.

¶ 7        As we noted, defendant argued that: "[A]s a rule, death or great bodily harm is not contemplated as the natural consequence of blows from bare fists." *Axtell*, 2017 IL App (2d) 150518, ¶ 58. Although defendant conceded that instances of death from multiple blows are a potential exception to that rule, "he maintain[ed] that the evidence did not prove that he hit Stone more than once in the bedroom or that his previous attacks had any role in causing her death." *Axtell*, 2017 IL App (2d) 150518, ¶ 58. The State countered that "the judge specifically stated that defendant had already caused Stone great bodily harm by battering her into unconsciousness." *Axtell*, 2017 IL App (2d) 150518, ¶ 73. "Thus, the State reason[ed], the judge could infer that, a short time later, defendant was practically certain that another punch would probably cause equally serious harm." *Axtell*, 2017 IL App (2d) 150518, ¶ 73. The State noted that "the law did not require the judge to find that defendant foresaw the *particular type* of great bodily harm that he actually inflicted." (Emphasis in original.) *Axtell*, 2017 IL App (2d) 150518, ¶ 73.

¶ 8        We affirmed the conviction, concluding that the trial court could reasonably find that defendant knew that his third blow would create a strong probability of death or great bodily harm. We reasoned that, "when [defendant] delivered the fatal blow, [he] knew that it was highly probable that he would inflict as much bodily harm on Stone as he did the last time that he battered her." *Axtell*, 2017 IL App (2d) 150518, ¶ 75.

> "Common sense dictated the inference that [Stone] was no more able to withstand the third blow than the second one. More important, defendant knew that he had just inflicted bruising and unconsciousness with a single punch." *Axtell*, 2017 IL App (2d) 150518, ¶ 75.

In so deciding, we held, as a matter of first impression in Illinois, that the trial court could properly conclude that "Stone's loss of consciousness [from the earlier blows constituted] 'great bodily harm' per the murder statute." *Axtell*, 2017 IL App (2d) 150518, ¶ 76.

¶ 9        Defendant filed a postconviction petition under the Act. He raised several claims, including that the evidence was insufficient to support his conviction. He claimed that the State failed to prove either (1) *mens rea* or (2) "a connection between [his] actions and [Stone's] death." In particular, defendant noted that the expert witnesses disagreed as to whether the rupture to Stone's right posterior cerebral artery was the result of a laceration from a strong blow to her head or the rupture of an aneurysm, which can be spontaneous. Defendant also asserted that appellate counsel was ineffective for failing to raise these challenges to the sufficiency of the evidence.

¶ 10        The court dismissed the petition under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 2018)). The court determined that "defendant's claim that he was not proven guilty beyond a reasonable doubt is barred by the doctrine of *res judicata*, as having been adjudicated on appeal." The court further stated that "the record sufficiently contradicts the defendant's claims regarding ineffective assistance of counsel and do not meet the 2-prong test in

*Strickland v. Washington*, 466 U.S. 668 (1984)." The court concluded that defendant "failed to make a substantial showing" of any deprivation of his rights. Defendant timely appealed.

¶ 11                                   II. ANALYSIS

¶ 12    On appeal, defendant asks us to reverse the dismissal of his petition and remand for second-stage proceedings. First, he argues that his petition stated the gist of a claim that appellate counsel was ineffective for not challenging the sufficiency of the State's proof that defendant's conduct caused Stone's death. Defendant claims that a challenge to the proof of causation had a reasonable chance of success because the State's expert (1) presented conflicting testimony on the way Stone died, (2) recognized that a ruptured cerebral aneurysm is a frequent cause of a subarachnoid hemorrhage, and (3) recognized that lacerations of a cerebral artery are "very rare." He further argues that "the decision to concede causation served only to undermine the argument that there was insufficient evidence of *mens rea*." Second, he contends that the trial court used the wrong standard to evaluate his petition.

¶ 13    In response, the State first argues that we cannot consider defendant's claim because (1) it was not raised in his petition, and (2) it is barred by *res judicata*. The State further argues that, even if we reached the merits of defendant's claim, we should still affirm the first-stage dismissal. The State explains that, even if the evidence established that Stone's intracranial bleeding was caused by a ruptured aneurysm rather than a laceration, defendant would still be guilty of murder since his blow caused the aneurysm to rupture, and it would be frivolous to argue otherwise. Thus, the State contends, it was reasonable for appellate counsel to forgo a challenge to causation and focus on the proof of *mens rea*. The State further argues that the court's reference to the incorrect standard for first-stage review of a postconviction petition was "merely a scrivener's error" and that this court may affirm on the independent basis that the petition's claims were frivolous.

¶ 14    A postconviction proceeding has three stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the trial court reviews the petition independently. *Hodges*, 234 Ill. 2d at 10. Taking the allegations in the petition as true to the extent that they are not contradicted by the record, the court determines whether the petition is "frivolous or is patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2016)). *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). A court should not dismiss a petition at the first stage if it "allege[s] enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act," that is, it states the " 'gist' " of a constitutional claim. *Hodges*, 234 Ill. 2d at 9 (quoting *People v. Porter*, 122 Ill. 2d 64, 74 (1988)). Further, first-stage dismissal is proper "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. A petition is deficient when it is "based on an indisputably meritless legal theory or a fanciful factual allegation," such as "one which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16.

¶ 15    If the court does not dismiss the petition at the first stage, it must docket it for second-stage proceedings. 725 ILCS 5/122-2.1(b) (West 2016). It is only at the second stage that "the circuit court must determine whether the petition and any accompanying documentation make 'a substantial showing of a constitutional violation.' " *People v. Tate*, 2012 IL 112214, ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 16    A claim that a defendant was denied his constitutional right to effective assistance of counsel is "governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Brown*, 2017 IL 121681, ¶ 25. "Under *Strickland*, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance." *Brown*, 2017 IL 121681, ¶ 25.

Counsel's performance is measured by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

¶ 17    "The *Strickland* standard applies equally to claims of ineffective appellate counsel, and a defendant raising such a claim must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Borizov*, 2019 IL App (2d) 170004, ¶ 14. "Thus, the inquiry as to prejudice requires the court to examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal." *Borizov*, 2019 IL App (2d) 170004, ¶ 14. "Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference." *Borizov*, 2019 IL App (2d) 170004, ¶ 14.

¶ 18    When a trial court applies the *Strickland* standard to a postconviction petition at the first-stage review, it must use a "more lenient" form of the standard. *Tate*, 2012 IL 112214, ¶¶ 18-19. " '[A] petition alleging ineffective assistance may not be *** dismissed [at the first stage] if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17).

¶ 19    Under the arguability standard, it is inappropriate for the trial court to resolve issues of trial strategy at the first stage of postconviction review. *Tate*, 2012 IL 112214, ¶¶ 20-24. For instance,

in *Tate*, the defendant's petition alleged that his trial counsel was ineffective for failing to call witnesses who could have offered exculpatory evidence. *Tate*, 2012 IL 112214, ¶ 4. The petition was dismissed at the first stage. On appeal, the State defended the dismissal by arguing that trial counsel could have made the strategic decision not to call the witnesses because their testimony would have incidentally bolstered aspects of the State's case. *Tate*, 2012 IL 112214, ¶ 21. The *Tate* court held the State's argument was inappropriate at the first stage, where the petitioner need only show that counsel's actions *arguably* fell below the *Strickland* standard. See *Tate*, 2012 IL 112214, ¶ 22. The *Tate* court's reasoning is equally applicable to claims of ineffective assistance of appellate counsel.

¶ 20 We first address the State's contention that defendant's argument is forfeited because he did not raise it in his petition. Justice Birkett, specially concurring in part and dissenting in part in this decision, raises this concern as well. It is true that a claim not raised in the petition cannot be argued for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505 (2004). However, at the first stage, we must give the defendant's petition a liberal construction. *Hodges*, 234 Ill. 2d at 21. In *Hodge*, the defendant's petition alleged that his trial counsel was ineffective for failing to investigate three witnesses who could have supported the defendant's theory of self-defense. *Hodges*, 234 Ill. 2d at 6. The State argued that the petition could not also be read to include a claim that the witnesses' testimony could have supported a theory of second-degree murder. *Hodges*, 234 Ill. 2d at 21. The supreme court rejected this argument:

> "The State's strict construction of defendant's petition is inconsistent with the requirement
> that a *pro se* petition be given a liberal construction. Where defendants are acting *pro se,*
> courts should review their petitions 'with a lenient eye, allowing borderline cases to
> proceed.' [Citation.] In the case at bar, the issue of whether defendant's *pro se* petition,

which focused on self-defense, could be said to have included allegations regarding 'unreasonable belief' second degree murder—*i.e.,* imperfect self-defense—is at minimum the type of 'borderline' question which, under a liberal construction, should be answered in defendant's favor." *Hodges*, 234 Ill. 2d 1, 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2nd Cir. 1983)).

¶ 21    Defendant's petition asserted that appellate counsel was ineffective for failing to contest the proof of either (1) *mens rea* or (2) "a connection between [his] actions and [Stone's] death." Defendant's argument on appeal is that appellate counsel, in conceding the issue of causation, was ineffective because (1) the proof of causation was weak and should have been challenged, and (2) the concession undermined appellate counsel's argument on *mens rea*.    Defendant argued subpoint (1) in his petition but did not expressly argue subpoint (2).  However, subpoint (2), like the other, leans heavily on deficiencies that defendant sees in the proof of causation.  After recounting the evidence, which includes a substantial discussion of causation, defendant stated in his petition, "Petitioner's appellate attorney was ineffective for failing to raise the above claim and argument.  Raising a claim and *conceding* a claim are two sides of a single coin.  Therefore, applying the rule of liberal construction, we read the petition as encompassing the argument defendant raises on appeal.

¶ 22    Next, we reject the State's assertion that defendant's claim is barred by *res judicata* because he raised a reasonable doubt argument on direct appeal.  "[I]ssues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*." *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002).  Defendant, however, alleges that appellate counsel was ineffective in challenging the sufficiency of the evidence.  Ineffectiveness claims are an exception to the *res judicata* bar. *People v. Blair*, 215 Ill. 2d 427, 450 (2005).

¶ 23    We turn to the merits of defendant's claim.  We begin with his assertion that appellate counsel's failure to contest causation undermined her challenge to the proof of *mens rea*. Defendant argues that, by neglecting to challenge the State's expert's theory, appellate counsel conceded not only that defendant struck Stone, but that he struck her with significant force, which is what the expert opined was necessary to cause the arterial laceration.  Of course, this only raises the question of whether defendant could have viably challenged the proof of causation.  The State contends that it would have been frivolous to argue that issue because the evidence sufficiently supported the finding that an arterial laceration caused Stone's death.   At this stage of postconviction review, defendant need not definitively prove appellate counsel's ineffectiveness. The question is whether it was (1) " '*arguable* that counsel's performance fell below an objective standard of reasonableness' " and (2) " '*arguable* that the defendant was prejudiced.' " (Emphases in original.)  *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17).  We agree with defendant that it is at least *arguable* that contesting the mechanism of Stone's death would have changed the outcome of the appeal.  Causation was heavily contested, with defendant presenting two experts to challenge the findings of the State's expert.  The State's expert made several significant acknowledgments, including that (1) laceration of a cerebral artery is "very rare," (2) a ruptured cerebral aneurysm can frequently cause a subarachnoid hemorrhage, and (3) some aneurysms are difficult to detect with the naked eye.  Moreover, even though the State's expert testified that a blow of significant force would be required to cause the arterial laceration, Stone had no facial or skull fractures but only a bruise on her cheek.

¶ 24    However, the State argues that, even if we had accepted (on direct appeal) defendant's argument that the evidence did not establish that a lacerated artery caused the subarachnoid hemorrhage, we would still have concluded that defendant's blow caused Stone's death, given the

evidence that the blow ruptured an aneurysm. We disagree. While the two defense experts opined that a ruptured aneurysm was the most likely cause of Stone's subarachnoid hemorrhage, they did not opine that the rupture was caused by physical trauma. Nor were any of the three experts able to detect an aneurysm in their postmortem examinations. The State's argument is based on speculation.

¶ 25 For the reasons stated, we reverse the first-stage dismissal of defendant's postconviction petition and remand the matter for second-stage proceedings under the Act. Because we reverse on the merits, we need not address defendant's claim that the trial court applied the wrong standard in dismissing the petition.

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we reverse the judgment of the circuit court of Lake County and remand this cause for further proceeding.

¶ 28 Reversed and remanded.

¶ 29 JUSTICE BIRKETT, specially concurring in part and dissenting in part.

¶ 30 I respectfully disagree with my colleagues that defendant's postconviction petition presents an arguable claim that defense counsel on direct appeal was ineffective for conceding that defendant's acts caused Tammy's death. I agree with the majority that the trial court applied the second stage "substantial showing" standard rather than the first stage "gist" standard. Our review is *de novo* and we may affirm on any basis supported by the record. *People v. Welling*, 2021 IL App (2d) 170944, ¶ 44 (citing *People v. Anderson*, 401 Ill App. 3d 134, 138 (2010)). The trial court's use of the wrong standard does not hinder our review.

¶ 31                                I. Procedural Default

¶ 32    In his *pro se* petition, defendant repeated the argument raised on direct appeal that "it is completely unreasonable to hold Petitioner responsible for knowing that the victim was at risk of a vessel rupture or that any minimal contact he had with her would cause it to rupture and result in her death." The trial court found that this claim was "barred by the doctrine of *res judicata*, as having been adjudicated on appeal." In his petition, defendant does not challenge the findings and opinion of Dr. Nancy Jones as to the cause of the Tammy's death. For example, in Part II-B of his *pro se* petition, defendant claimed that both trial counsel and appellate counsel were ineffective for failing to object to the introduction of autopsy photographs. Defendant's petition states, "Petitioner's trial counsel should have attempted to have the autopsy photos excluded on account of their prejudicial and cumulative nature. Further, as the cause of death was not in dispute, he could have stipulated to these facts." (Emphasis added.) In Part III-A of his *pro se* petition, defendant claimed that he "should have been granted an instruction on the lessor included offense of second[-]degree murder" based on "mutual quarrel," citing *People v. Eason*, 326 Ill. App. 3d 197 (2001). In Part III-B of his petition, defendant claims that trial counsel was ineffective for failing to request a second-degree murder instruction and appellate counsel was "ineffective for not raising this claim on direct appeal."

¶ 33    Defendant's handwritten 15-page *pro se* petition makes no mention whatsoever of Dr. Teas or Dr. Leetsma. The petition does claim that "the prosecutor failed to establish a connection between Petitioner's actions and the victim's death," but just before this sentence, defendant states that "Petitioner's step-son, Johnson, stated that the victim and Petitioner were intoxicated and arguing. Neither he nor anyone else witnessed Petitioner strike the victim at any time the night she died." Defendant goes on to state:

"Further, Jones explained that the occurrence of such a rupture in the circle of Willis was extremely rare. This was one of four cases she had seen and the only woman. It is completely unreasonable to hold Petitioner responsible for knowing that the victim was at risk of a vessel rupture[,] or that any minimal contact he had with her would cause it to rupture and result in her death."

Defendant attached as Ex. 9 to his petition, a copy of his written statement to the police in which he provides innocent explanations for Tammy's injuries and denies that he hit her. Defendant also attached portions of Dr. Nancy Jones's testimony, where she explained her findings. While defendant clearly had access to the record, he did not attach any portion of the transcripts of either Dr. Teas or Dr. Leetsma. While a *pro se* postconviction petition must be given a liberal construction and viewed with a lenient eye, "the pleading must bear some relationship to the issues raised on appeal." *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48. "Liberal construction does not mean that we distort reality." *Id* citing *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. In this appeal, appellate counsel now argues that counsel on direct appeal was ineffective for not challenging the findings and opinions of Dr. Nancy Jones, which defendant clearly and unequivocally accepts in his petition. No reasonable jurist reading defendant's petition and documentation would read it as a challenge to the State's evidence establishing Tammy's cause of death. In discussing the claims defendant raised in his petition, the majority states that "defendant noted that the expert witnesses disagreed as to whether the rupture to Stone's right posterior cerebral artery was the result of a laceration from a strong blow to her head or rupture of an aneurysm, which can be spontaneous." Defendant's petition makes no such claim. The only expert defendant referred to was Dr. Nancy Jones. Defendant's claim that trial counsel should have requested a second-degree murder instruction (finding) belies any such claim. I would find that

- 14 -

defendant's argument on appeal is forfeited. *People v. Petrenko*, 237 Ill. 2d 490, 502 (2010) ("any issues to be reviewed must be presented in the petition filed in the circuit court, and a defendant may not raise an issue for the first time while the matter is on review") (citing *People v. Jones*, 211 Ill. 2d 140, 148 (2004)). The issue defendant's petition did raise, failure to prove the *mens rea* for first degree murder, is barred by the doctrine of *res judicata*. *People v. Blair*, 215 Ill. 2d 427, 445 (2005).

¶ 34                    II. Merits of Cause of Death Argument

¶ 35    Assuming *arguendo*, that defendant's *pro se* petition could be viewed as raising a claim that appellate counsel was ineffective for conceding that defendant caused Tammy's death, I would find that it is not arguable that appellate counsel's performance was ineffective.

¶ 36    In order to prevail on a claim of ineffective assistance of counsel, "a defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Petrenko* at 497. At the first stage of postconviction review, "a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* (citing *People v. Hodges*, 234 Ill. 2d 1, 17 (2009)).

> "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly,

unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *People v. Smith*, 195 Ill. 2d 179, 190 (2000).

¶ 37 "Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference." *People v. Rogers*, 197 Ill. 2d 216, 223 (2001) (citing *People v. Mack*, 167 Ill. 2d 525, 532-33 (1995)). The majority states that "[u]nder the arguability standard, it is inappropriate for the trial court to resolve issues of trial strategy at the first stage of postconviction review." ¶ 19 (citing *People v. Tate*, 2012 IL 112214, ¶¶ 20-24. I strongly disagree with this interpretation of our Supreme Court's opinion in *Tate*. *Tate* involved an allegation of ineffective assistance of trial counsel for "failing to call four witnesses, two of whom Tate claimed could establish an alibi." *Tate*, 2012 IL 112214, ¶ 4. On appeal from the first stage dismissal of Tate's petition for postconviction relief, the State argued that trial counsel had "a sound strategic reason for not calling" one of the witnesses. *Id*, ¶ 21. The Supreme Court noted that "[t]his argument is more appropriate to the second stage of postconviction proceedings, where both parties are represented by counsel, and where the petitioner's burden is to make a substantial showing of a constitutional violation." *Id*, ¶ 22. Unlike in *Tate*, no fact finding is necessary to determine either deficient performance or prejudice in this case.

¶ 38 This case involves an allegation of ineffective assistance of appellate counsel for conceding that defendant's acts caused the victim's deaths.[1] When assessing appellate counsel's performance, like trial counsel's, we must indulge a strong presumption that counsel's decisions fell within the

---

[1] I have ordered the record in this appeal to be supplemented with the briefs in case No. 2-15-0518, *Axtell I*, 2017 IL App (2d) 150518. In this case, we have a complete record and no fact finding is necessary.

wide range of reasonable professional assistance, and that under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

¶ 39    A review of the appellate briefs filed on defendant's behalf in *Axtell I* demonstrate that appellate counsel had carefully reviewed the testimony of the three doctors who gave opinions regarding the cause of Tammy's death. Dr. Jones concluded that the subarachnoid hemorrhage was caused by "a longitudinal tear, or laceration, in the right posterior cerebral artery (one of the blood vessels of the Circle of Willis)." Def. Brief, *Axtell I* at 10. Appellate counsel noted that Dr. Jones "looked for an aneurysm but did not find any in the Circle of Willis." *Id.* at 11. Dr. Teas and Dr. Leestma agreed with Dr. Jones "that the cause of death in this case was massive subarachnoid hemorrhage." *Id.* at 13. Leetsma looked at the photographs taken during the autopsy and could not "see a tear, rupture, or lesion" as identified by Dr. Jones. Leetsma said that "there was no way to know if Jones correctly identified the right posterior cerebral artery as the source of the bleeding." *Id.* Dr. Teas opined that the cause of death "was an undetected ruptured aneurysm." *Id.* at 14. Dr. Teas "found no evidence of aneurysm in the Circle of Willis." *Id.* at 15.

¶ 40    Dr. Leetsma acknowledged on cross-examination that "there is no doubt that a massive <u>acute</u> subarachnoid hemorrhage occurred and caused Miss Stone's death." (Emphasis added.) He also acknowledged that a "closed head injury can tear a vessel that would lead to a subarachnoid hemorrhage." He also said that "the circumstances of the traumatic events most commonly involved physical altercation typically involving one or more blows with a fist." Dr. Leetsma was not made aware of defendant's statements prior to testifying. While Dr. Teas and Dr. Leetsma suspected that Tammy may have had an aneurysm, both acknowledged that they saw no evidence of any aneurysm. Dr. Jones testified that she looked for any evidence of an aneurysm during the autopsy and saw none.

¶ 41     Appellate counsel's decision not to challenge the cause of death in this case was clearly a matter of strategy. On this record, there was very little, if any chance, that a challenge to the sufficiency of the evidence as to cause of death would have been successful. Unlike the "lenient eye" with which reviewing courts examine postconviction petitions at first stage, a sufficiency of the evidence claim is the opposite. In considering the sufficiency of the evidence, the question is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence." *Id.* at 279. (citing *People v. Pollock*, 202 Ill. 2d 189, 217 (2002)). In deciding a sufficiency of the evidence claim, "the reviewing court must allow all reasonable inferences in favor of the prosecution." *Id.* at 280. In addition to the standard of review for a sufficiency of the evidence claim, it is also important to recognize that in order to prove a defendant guilty of first degree murder, the State does not have to prove that the defendant's actions were the "sole or immediate cause of death in order to constitute the legal cause of death." *People v. Mars*, 2012 IL App (2d) 110695, ¶ 16; *People v. Brown*, 169 Ill. 2d 132, 152 (1996). Illinois Pattern Jury Instructions, Criminal, No. 7.15 (4th ed. 2000) provides:

> "In order *** to find that the acts of the defendant caused the death of [the victim], the State must prove beyond a reasonable doubt that defendant's acts were a contributing cause of the death and that the death did not result from a cause unconnected with the defendant. However, it is not necessary that you find the acts of the defendant were the sole and immediate cause of death." (Emphasis added.)

¶ 42    This court noted in *Axtell I* that Dr. Teas "stated that one way an aneurysm can rupture is physical trauma from an altercation, such as a blow to the head with a fist." 2017 IL App (2d) 150518, ¶ 46. It was undisputed that there was a physical altercation between defendant and the victim, Tammy Stone. Stone had fresh injuries that were consistent with being struck, including a bruise below her left eye. Tammy had been knocked unconscious before the final altercation in the bedroom where a final "thud" was heard just before defendant's exit. Tammy had asked for help finding her phone, saying defendant was "going to kill me." Earlier, Tammy had called her daughter, crying, and told her that she got her "ass beat." After his arrest, while alone in an interview room and being recorded, defendant made the following statements: "I killed her. I murdered her. I murdered my girlfriend. I deserve to die. Eye for an eye. That's what I believe. Death penalty. That's it."

¶ 43    As the Supreme Court observed in *Strickland v. Washington*, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 684. The same can be said of appellate representation. Even without applying any measure of deference to appellate counsel's decision not to challenge cause of death on direct appeal, defendant does not make an arguable claim of deficient performance or prejudice, because given the evidence and standard of review, the claim is meritless. *People v. Wesby*, 2019 IL App (1st) 170442, ¶ 20.

¶ 44    Defendant cites *People v. Domagala*, 2013 IL 113688 for the proposition that causation must be proven to establish criminal responsibility and "counsel may also be ineffective for failing to contest causation when there is an intervening cause of death unrelated to the defendant's acts." *Id.*, ¶¶ 39-47. *Damagala* does not help defendant. That case involved omissions by trial counsel.

The victim in *Damagala* was 84 years old and died in the hospital where he was admitted after being battered by the defendant.

¶ 45    In his postconviction petition, Damagala maintained "that trial counsel failed to investigate the gross negligence of Stanley's (the victim's) medical staff." *Id.*, ¶ 36. In this case, we are evaluating the decision of appellate counsel to concede causation where the hurdles to succeed on a claim that the State failed to prove causation are virtually insurmountable. In this case, there was no evidence of an intervening cause of death. Defendant's own experts agreed that the injury to Tammy's brain was "acute." In considering whether any rational trier of fact could have found that all the elements have been proven beyond a reasonable doubt, we examine all of the evidence in the light most favorable to the State. In his brief, defendant's argument focuses on the expert testimony and fails to even discuss defendant's admissions and Tammy's excited utterances, confirming that it was defendant who "beat her." On direct appeal, counsel must evaluate the merits of a sufficiency of the evidence claim, recognizing that "a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 46    The argument that appellate counsel was ineffective for conceding that defendant caused death is not only waived, it is flatly refuted by defendant's *pro se* petition. My colleagues should not have addressed the argument. "[A]ny issues to be reviewed <u>must</u> be presented in the petition filed in the circuit court." *People v. Jones*, 211 Ill. 2d 140, 148 (2004). (Emphasis added.) See 725 ILCS 5/122(b) (West 2018).

¶ 47    The majority acknowledges the State's argument that "we cannot consider defendant's claim," (Maj. ¶ 13) but does not explain how or why it goes on to consider the claim.

¶ 48    III. Ineffective Assistance of Trial and Appellate Counsel for Failure to Seek a Second

Degree Murder Finding

¶ 49    While this case was under consideration, we ordered supplemental briefing on two issues: "(1) whether appellate counsel was ineffective for failing to raise the issue of whether trial counsel erred by not requesting the trial court to consider second-degree murder as a lesser included offense; and (2) whether the trial court erred by not addressing defendant's assertion that trial counsel should have requested the court to consider a finding on a lesser included offense."

Both parties have submitted supplemental briefs.

¶ 50    Defendant argues that his *pro se* petition makes an arguable claim that trial counsel was ineffective for failing to seek a "finding of second-degree murder based on mutual combat." Defendant points out that, prior to trial, the parties engaged in plea negotiations. On May 29, 2013, the parties requested a conference with the trial court pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Defendant was properly admonished and agreed to have the conference. On June 3, 2013, the trial court, at the State's request, made a detailed record of what occurred during the 402 conference. The trial court's summary of the evidence included a statement that "there had been mutual combat." The trial court stated that it "thought 20 years on a second degree was fair, and that if you were to go to trial[,] that it could be in excess of somewhere between 30 and 40 years." Defendant confirmed that he had discussed the offer with his attorneys. Defense counsel confirmed that she had informed defendant that "the second degree offer at 20 years is at 50 percent" and that defendant "formally rejected that offer."

¶ 51    Defendant acknowledges that, in entering its findings at the conclusion of defendant's bench trial, the trial court *sua sponte* rejected a finding of second-degree murder. In doing so, the trial court only considered whether the evidence showed "serious provocation*** sufficient to

excite intense passion in a reasonable person," and not "mutual combat." Defendant argues that it is arguable that failing to seek a second-degree finding, along with the involuntary manslaughter and simple domestic battery that counsel did request, amounts to ineffective assistance of trial counsel. Defendant argues that the record discloses no reason for trial counsel's failure to pursue second-degree murder based on mutual combat. Defendant also argues that, to the extent this argument was available on the record, appellate counsel was arguably ineffective for failing to raise the issue on appeal.

¶ 52     The State objects to our order directing the parties to submit supplemental briefs, arguing that we violated our Supreme Court's admonition in *People v. Givens*, 237 Ill. 2d 311, 325 (2010). The State argues that we "should only address an unbriefed issue when the record contains obvious error in the trial court proceedings." *Id.* The State argues that because "the trial court did explicitly consider second-degree murder," defendant suffered no prejudice and therefore, "there is no obvious error in the record."

¶ 53     First, the State forgets that the decision to request a lesser included instruction belongs to the defendant, not defense counsel. *People v. Brocksmith*, 162 Ill. 2d 224, 229-30 (1994). In this case, the record is silent as to whether defense counsel discussed the second-degree murder option with defendant. Defense counsel argued that, even if the trial court found that defendant caused Tammy's death, "at best, it's involuntary manslaughter." The defense also requested that the trial court consider finding defendant guilty of the lesser included offense of simple domestic battery. In his *pro se* petition, defendant argues that he was entitled to an "instruction on the lesser included offense of second[-]degree murder." Obviously, in a bench trial, the request is for a lesser included finding, not a jury instruction. "[T]he failure to permit a defendant to make that decision would constitute reversible error." *People v. Moore*, 358 Ill. App. 3d 683, 689 (2005), citing *Brocksmith*,

162 Ill. 2d at 229. As defendant correctly notes in his petition, where there is even "slight evidence" that would support a lesser-included option, he is entitled to have it considered. All that is required is that there be some evidence, if believed by the trier of fact, that would reduce the crime to a lesser offense. *People v. McDonald*, 2016 IL 118882, ¶ 25.

¶ 54     The State's argument, that this court violated *Givens*, is specious. "The Appellate Court has the authority to order supplemental briefing and to decide the case on an issue that was not initially raised by the parties or addressed by the circuit court." *Marconi v. City of Joliet,* 2013 IL App (3d) 110865, ¶ 16; *People v. Green*, 225 Ill. 2d 612, 616 (2007). Contrary to the State's argument, in *Givens*, the appellate court raised and decided the case on "a theory never raised by defendant or addressed in their appellate briefs." 237 Ill. 2d at 323. In fact, *Givens* guides us thusly: "We agree with the general proposition that a reviewing court does not lack authority to address unbriefed issues and may do so in the appropriate case, *i.e.*, when a clear and obvious error exists in the trial court proceedings." *Id.*

¶ 55     We recently addressed the State's challenge to our authority to order supplemental briefing to address a potential reversible error. *People v. Saulsberry*, 2021 IL App (2d) 181027, ¶¶ 100-107. As we pointed out there, it is well-settled that there are times "when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*." *Id.* ¶ 100 (quoting *Massaro v. United States*, 538 U.S. 500, 508 (2003)). In this case, it was the State's response brief that alerted me to the fact that defendant raised a claim on appeal that was never presented to the trial court. Both the interests of justice and judicial economy required supplemental briefing on the main claim in defendant's *pro se* petition. On the current state of the record, it does appear that a clear and obvious error may have occurred. We have no way of knowing whether the decision to forgo requesting a second-degree finding was made by defendant or his attorneys. We do know that the

trial court made a record, based upon representation of the parties, that "there had been mutual combat." The trial court's comments following a 402 conference are not binding on the trial court where no agreement is reached. See *People v. Meza*, 376 Ill. App. 3d 787, 790 (2007). Likewise, defendant's rejection of the plea to second-degree murder for a 20-year sentence does not mean defendant would not have requested a second-degree murder finding if given the opportunity to do so.

¶ 56    Out supreme court has stated, when "a lesser included offense instruction (finding) is tendered, a defendant is exposing himself to potential criminal liability, which he otherwise might avoid, and is in essence stipulating that the evidence is such that a jury could rationally convict him of the lesser-included offense." *People v. Medina*, 221 Ill. 2d 394, 409 (2006). Our supreme court recommends that when there is a tender of a lesser-included offense, the trial court should conduct "an inquiry of defense counsel in defendant's presence to determine whether counsel has advised defendant of the potential penalties associated with the lesser-included offense, and the court should thereafter ask defendant whether he agrees with the tender." *Id.* In this case, the trial court did not conduct a *Medina* type inquiry when defense counsel requested a guilty finding on either involuntary manslaughter or domestic battery. As our supreme court also recognized in *Medina*, the decision to tender a lesser-included offense option "may have a serious and adverse impact on the strategy defense counsel has pursued to that point in the trial." *Id.* The court cautioned trial courts that, where there was no request for a lesser-included offense, by advising a defendant of his right to request a lesser-included offense instruction, "the trial court could influence the defendant to tender an instruction he otherwise would have chosen to forgo." *Id.*

¶ 57    The State argues that defendant suffered no prejudice from defense counsel's failure to request a second-degree murder finding because the trial court *sui sponte* considered and rejected

second-degree murder. While this is a valid argument, the trial court did so without the benefit of argument by the parties. In his supplemental brief, defendant argues that, when the trial court rejected second-degree, it considered only whether there was sufficient evidence under "sudden and intense passion resulting from serious provocation" and not "mutual combat." "Mutual combat is one of the recognized forms of serious provocation sufficient to reduce first-degree murder to second-degree murder." *People v. Moore*, 343 Ill. App. 3d 331, 339 (2003). "Mutual combat is a fight or struggle that both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *McDonald*, 2016 IL 118882, ¶ 59. Noticeably absent from the State's supplemental brief is any argument as to why the facts would not support a finding that defendant met his burden of proving mutual combat by a preponderance of the evidence. 725 ILCS 5/9-2(c) (West 2018).

¶ 58    At the first stage of postconviction proceedings, a defendant need only present the gist of a meritorious constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). I believe that defendant has stated the gist of a claim. It is at least arguable that trial counsel was ineffective for not requesting a second-degree murder finding, and it is arguable that appellate counsel was ineffective for failing to argue that trial counsel provided ineffective assistance. Of course, if it turns out that defendant was advised of the second-degree murder option and made the decision to forgo requesting it, that would be a matter of strategy, and no error would have occurred. *People v. Dominguez*, 331 Ill. App 3d 1006, 1013 (2002).

¶ 59    In conclusion, I would hold that the issue raised in defendant's opening brief is forfeited. I would hold that defendant raised the gist of a constitutional claim in his *pro se* petition, that both trial and appellate counsel provided ineffective assistance, and remand this case for second stage postconviction proceedings.